We'll hear argument this morning in Case 15-474, McDonnell v. United States. Mr. Francisco. Mr. Chief Justice, and may it please the Court. The government argues that in quid pro quo bribery, official action encompasses anything within the range of official duties. In order to reach that conclusion, it asks that you disregard a 9-0 decision of this Court. The government is wrong. In order to engage in official action, an official must either make a government decision or urge someone else to do so. The line is between access to decision-makers on the one hand and trying to influence those decisions on the other. And that's the Sundiamond case, the 9-0 case that you refer to? Yes, Your Honor, the Sundiamond case, the 9-0 case. And I think what Sundiamond confirms is that when an official simply refers someone to another official, an independent decision-maker, for an objective decision, he hasn't crossed that line into prohibited official action. I take it all parties concede that the act of the university official to undertake or not to undertake a research study would be an official action? Yes, Your Honor. And the question is, did the governor cross the line into influencing officials to undertake that action, and was the jury properly instructed? Can you tell me the posture of the case with reference to, under Virginia law, the government, the governor's authority or lack of authority to tell the university, you will engage in this research or you will not engage in this research? Sure, Your Honor. What is the state of the law, and do the parties agree on this point? Your Honor, I think that the parties agree that the governor at least had a bully pulpit authority, but he had very little authority to actually direct any university researcher to do anything. And here I think one of the critical questions, there are two critical questions. One, was the jury told that he even had to find that he tried to do that, and here it wasn't. And two, did he in fact do that, and we would assert that he clearly didn't. Would it have made a difference if the medical faculties had agreed to the testing? Your Honor, if they had agreed to the testing, I still don't think it would have made a difference in terms of whether Governor McDonald tried to influence their decision on that, because he didn't. And it still wouldn't have made a difference on the jury instructions, because the jury still wasn't instructed that it had to find that Governor McDonald tried to influence a particular governmental decision, because it wasn't so instructed. Mr. Francisco, could I ask the line you're drawing between exercise and influence and providing access? Just to sort of test that with a hypothetical. Suppose that somebody knew that there was a contractor who was going to award a very large contract to one of two or three firms that he was meeting with. And a company paid to make sure that they were on the meet list, to be one of those two or three firms. In other words, bribed an official in order to become one of those two or three firms from which that was the pool from which this billion-dollar contract would emerge. Would that be sufficient? Your Honor, I think that probably would be official action, because there, the only way you can even get a decision in your favor is by being one of the three people on that list. So being on that list is a prerequisite to getting a decision. Being denied on that list is a denial of the decision. And that's an official governmental action. Here, the jury wasn't instructed on any of this. They didn't have to find that Governor McDonald tried to influence anything. Indeed, it would have been required to convict under these instructions if Governor McDonald had called up a staff member and said, I'd like you to meet with this fellow, Johnny Williams. I don't really trust him. His product's a little hinky. But you're the expert. So meet with the guy and exercise your complete and unfettered independent judgment. Let me just change the hypothetical a little bit. Suppose that a governor is going to make a decision, eventually going to make a decision that will help either A or B and hurt either A or B, and the governor says, you know, I'm going to have a preliminary discussion about this with members of my staff. We're not going to come to any decision, but we're going to talk about it. And whichever of you pays the most money will be able to sit in on this staff meeting. What about that? Sure. Well, Your Honor, I think I'd want to know, are there facts suggesting that it really isn't just a payment to sit in on the staff meeting, it's a payment to try to influence the meeting? Just a payment to sit in. If it's to sit on the staff meeting, I think it would violate a whole lot of other laws. But I don't think, unless there was any kind of indicia that you were trying to influence the outcome, you would cross that line into prohibited official act corruption. After all, these laws are not meant to be comprehensive codes of ethical conduct, as this Court said in Sundiaman. They're meant to target the worst form of ethical misconduct, the corruption of official decision-making. And if one of them — Well, it's not just sitting in. Maybe I wasn't — I should sharpen this. Suppose the party is allowed to speak and present its point of view. Your Honor, again, the more facts that you put on to suggest that it is more of an attempt to influence a decision, it's not just a meeting, I think the more likely you are to get to that official act line. Tell me, what do we do with the evidence in the case that the university individuals who were assessing whether or not to do these studies themselves felt pressured? There's both testimony and documents in which the pros and cons of accepting these studies was discussed. Right. And in the pro and con, it was the Governor really wants us to do this. The Governor is pressuring us to do this. We just don't think it's a good idea. They were honorable people, obviously. But the point is, what do we do with the fact that they perceived that he was trying to influence them? I have two responses, Your Honor, a legal one and a factual one. Legally, you still need to instruct the jury that it had to find that Governor McDonnell tried to actually influence a government decision. And here it wasn't instructed. So they could have completely agreed. But why? Isn't this — I thought that this crime was taking money knowing that it was being paid to influence an official act. So aren't all of these examples of official acts, whether they are or they aren't, irrelevant? The question is, what was his intent at the moment he took the money? And why couldn't a jury infer at that moment that he took it with the intent to commit an official act the way Mr. Williams wanted it committed? So, again, Your Honor, two responses. Even assuming that the jury could have inferred it, you still need to tell them what an official act is, that an official act is an attempt to influence an actual governmental decision. Well, to study these dietary supplements. Well, to actually, you know, conduct tobacco commission-funded state studies. But you still need to tell them what that is. But I'll get directly to your question, why is it that the actual official acts are relevant? And that's because it's both the district court and the court of appeals' opinions made clear. Here, in this case, the corrupt agreement turned entirely upon, as the district court case said, it hinged upon whether the five specific acts were, in fact, official acts, because in the absence of any direct evidence of a corrupt agreement, the government's argument was that you could infer one from the pattern of actual official acts on the one hand and the pattern of gifts and loans on the other and the temporal connection between the two. And so is it your position that at page 60 of the Supplemental Joint Appendix the instructions aren't numbered, which makes it a little hard, but the judge instructs the jury that official actions are set forth in the five paragraphs of the indictment, and is it your position that at least some of those are not official acts? Yes, Your Honor, and certainly the five things that were proved in this case are not official acts. And likewise, I don't think any of those things, as they actually came into evidence, demonstrated official acts, because in none of them did government go across that line in trying to influence the outcome of any particular decision. And just as critically, the jury was never told it had to find that. So the jury in this case, Justice Sotomayor, could have completely agreed with our version of the facts. It could have agreed that, as we argued very vigorously, that the most that Governor McDonnell did here was refer Johnny Williams. Well, this gets back somewhat to Justice Alito's hypothetical about arranging the meeting and we can up the ante to see how close the meeting came to be in an official act. But I take it that at some point your position is that a governmental — that an official act must be the exercise of governmental power. Is that your position? Well, Your Honor, it's either making a decision on an exercise of governmental power or trying to influence it. As in the Birdsell case, where the defendants there were trying to persuade the grant of clemency. But if you're simply setting up a meeting so that somebody can appeal to the independent judgment of an independent decisionmaker and you're not trying to put your thumb on the After all, government officials refer friends and benefactors to staff members all the time in order to avoid taking official action. Do you concede that there is sufficient evidence in this record, let's say we accept your argument about the charge being insufficient, but this could go back and a jury could be asked, did the Governor try to influence a decision on the part of the medical faculties? Your Honor, we don't concede there was sufficient evidence. But regardless, we also argue that the jury was improperly instructed on this, which Justice Sotomayor goes to the point I think you were making. If the jury was improperly instructed, then you don't actually assume all of the evidence in favor of the government. The question then becomes, could a — would a properly instructed juror have been required to convict? Here, even if the jury completely agreed with us, and they very well may have, under these erroneous instructions, they still would have been required to convict because under these instructions, simply referring somebody to a meeting without trying to influence the outcome of that meeting constitutes official governmental action. I suppose arranging a meeting could be official government action if that were your job. In other words, you're not just a secretary, but your job was to manage the Governor's schedule. You decided who met with him. You decided when. And that's your job. That's — so anything that individual does, I suppose, would be an official act. I think that's possible, Chief Justice. Of course, in this case, we don't have anything like that. We simply have referrals to meetings with other officials so that, at best, the alleged bribe payer here, Johnny Williams, can try to persuade them to his cause. Well, can I follow up on that? Because what you just suggested, right, is that you could suppose that there were a scheduler for a Governor or for the President or whatever, and that scheduler was selling meetings. So you would think that's part of her job? And if I just understood you correctly, that falls within the statute? No, Your Honor. I think that would be a very close case. That would be a very close case, because at the end of the day, if you're not actually making a governmental decision or influencing the outcome of an actual governmental decision, I think, Chief Justice, you might actually be violating a lot of other laws, including the separate provision in Section 201 that prohibits you from undertaking any act in violation of your official duties in exchange for money, or 5 U.S.C. 7353, which prohibits you from taking anything from anyone whose interests could be affected by the performance or nonperformance of your duties. But I think that the line has to be, and the only line that comes out through the cases, is you're actually either making a decision on behalf of the government or you're urging someone else to do so. You're trying to push them in a certain direction. Now, wait. You see, I can go back to a lot of different commissions, the Brown Commission, the Senate S. 1, the language of the statute, and I read official action, something quite similar to the statute here. A decision, opinion, recommendation, judgment, vote, or other conduct, perhaps other similar conduct, involving an exercise of discretion. So in this case, the official action we're talking about is giving money to a group of people in the university to conduct a study. Now, the governor didn't do that. But a person who tries to influence an official action and is also in the government is also guilty. But wait. That's the Indian case. Yes. But wait. The word influence is too broad, because every day of the week, politicians write on behalf of constituents letters to different parts of the government saying, will you please look at the case of Mrs. So-and-so, who was evicted last week. And that's so common, it can't pick that up. But then you use the word urge. That's not exactly a legal word. And what I'm looking for is a set of words that will describe in both sides' positions what we should write as the words that describe the criminal activity involved in talking to or influencing the person who does create the official act, like give a contract, like vote, like et cetera. Now, those are the words that I can't find. And I'd appreciate your opinion. Sure, Your Honor. And I think that the answer is that what district courts have to do is understand the general rule, which I think at some level has to be an attempt to influence, and then flesh it out in a way that's appropriate to the facts of the case. Well, you want to use attempt to influence? My goodness. Letters go by the dozens over to the Secretary of HUD, to the Secretary of HHS, to the Secretary of the Assistant Secretaries, and they say, my constituent Smith has a matter before you that has been pending for 18 months. We would appreciate it if you would review that and take action. And then the elected official says to Smith, I did my best on this. And Smith thinks, good, he's used his influence. Right. A crime? My goodness. Absolutely not, Your Honor. All right. Fine. You say absolutely not. That's what I thought you would say. So I want to know. But the words you used were attempt to influence. And so I don't think that's the right word. And I want to know what the right words are in the instruction that the judge is going to give, not in your case, but in general. Well, can I give you an example from another case that, although I do think instructions are generally tailored to the case, an example from another case. Of course they are. But you have to have the standard that will distinguish the urger from the one who does it criminally and the one who doesn't. And in the Ring case, I thought that Judge Hovell had some very useful instructions where she wrote, and this is at page 1083 of the joint appendix, Therefore, official action includes the exercise of both formal official influence, such as the legislature's vote on legislation, and informal official influence, such as the legislature's behind-the-scenes influence on other public officials in the legislative or executive branches. Oh, there we have it. There we have it. All these letters going over saying, please look at Mrs. Smith's eviction notice. And Mrs. Smith, who, by the way, took me to lunch last week. And I completely agree, Your Honor, which is why in our proposed instructions Well, that won't do it. The one you just read won't do it. Well, and that's why in our proposed instructions, I think it needs to be tailored further to the facts of the case. So in our case, we went on to say, say, merely arranging a meeting, attending an event, hosting a reception, or making a speech are not standing alone official acts. All right. So if you use that, the key to the word in there is merely. Yes, Your Honor. Because sometimes it could. Yes, Your Honor. And somebody might have the embarrassing question, merely when it can or merely when it can't. Give me a little enlightenment. Your Honor, I think that the answer is, if the evidence shows that there was, and I hate to go back to the word that I know you don't like here, but if the evidence shows that there really wasn't an attempt to try to push the separate decision-maker that you're supposedly trying to influence one way or another, but you really are just sending it over for a meeting, and that independent decision-maker is left to their independent judgment, then you haven't crossed that line. But if the evidence is the same. The word that Justice Breyer is concerned about comes from Birdsall, with intent to influence their official action. So we can hardly fault the district judge for using in Ring the same words that this Court used in Birdsall. I agree, Your Honor. And I thought that Judge Hovell did a very good attempt at defining, because she actually went further than what I just read to you, Justice Breyer. She continues along the lines that we proposed in our instructions that, quote, mere favoritism as evidenced by a public official's willingness to take a lobbyist's telephone call or to meet with a lobbyist is not an official act. So I think that the idea is, Your Honor, I understand, Justice Breyer, that influence itself doesn't totally solve the problem. But what district court judges do is that they then explain to the jury what they mean by influence. And influence is not. Scalia. Where can we find the best definition, in your view, of an official act? Your Honor, I think that the best definition of an official act is essentially the one that I tried to articulate at the outset. You need to either make a decision on behalf of the government or try in some way to use your influence to pressure or urge or persuade or cajole someone else who has governmental power to make a decision on an action. I agree with Justice Breyer. I just don't see the limiting principle in the second part. Your Honor, I think in many, in some cases, I think the limiting principle might be difficult. It's not a perfect and precise formulation. But I think in this case, it's a particularly easy principle, because here the jury wasn't given any instruction on the line at all. So, Justice Breyer, in your hypothetical, sending that letter over is an official act under the instructions as given and under the theory pushed by the Solicitor General's office in this case, because it is an action. I'm not sure that's right. It seems to me the official act is the exercise of governmental power to require citizens to do or not to do something or to shape the law that governs their conduct. I completely agree with you, Justice Kennedy. Under your view, under the hypotheticals that have been thrown around, the janitor who gets the bottle of beer in order to clean your classroom first, is that a governmental act? Certainly not in my view. But the government Well, what's the difference? The difference is, one is you're exercising power on behalf of the government as a whole. So the janitor, for example, if he's buying, if he's using government money to buy janitorial supplies and engaging in government contracting, that's an exercise of governmental power. If you're simply cleaning out a classroom, I don't think you're exercising government power. So, too, when you simply send somebody to another official for an independent and objective decision by that official, but you don't try to put your thumb on the scales of that decision, you haven't crossed the line. And I think it's very important in a criminal statute like this, because if you really do think that a referral, just simply making a referral, is official action that crosses the line into bribery, I think you do have some very serious vagueness concerns with the Hobbs Act and honest services. Can I ask Sure. I'm sure it depends on who's making the referral or the call, right? And Justice Breyer's hypothetical, if it's a congressperson calling somebody and saying, could you look into this matter for my constituent, the person should look at it, I suppose, and that's one thing. If it's the President who calls and says, I want you to look at this matter for my constituent, that might exercise considerably more influence. Two things, Your Honor. First, you still do need to tell the jury that that's what they have to find. And here the jury was never told in any way, shape, or form that they had to find an attempt to influence. So I think that is sufficient in and of itself to at the very least require a new trial here. Under these instructions, as the government itself seems to agree, any action within the range of official duties constitutes official governmental action. So, Justice Kennedy, in the letter being sent over from a senator, since that is within the range of official duties, that counts under the government's formulation and under the jury instruction as given, since it is, after all, a settled practice of officials to send those kinds of letters. That's why it was incumbent upon the district court to draw some kind of limit. And here the jury could well have agreed with us that even though he was the governor of the State, Mr. Chief Justice, he did not try to influence the actual decision. He simply made the same type of referral that he made day in and day out during this administration, where he simply sent a constituent to the appropriate official to exercise appropriate judgment. Kagan. You said something before, and I might have misunderstood you, but do you think that of the five listed official acts, do you think none of them meet the standard that you are suggesting, or do you think some of them do and some of them don't? Two answers. First of all, we don't think that any of them meet the standard. But secondly, the jury certainly could have agreed with us on that, given the evidence that we put forward. And therefore, the erroneous instruction was critical to this case. Because even if they had agreed with us, they would have been required to convict under that erroneous instruction since, take the health care leader's reception. They could have concluded that that was an official act and that was the only basis to convict, and they could have agreed with our evidence on everything else.  That might be right. It might be that you still have a winning argument, even if some of the five are fine. But if we could just focus on them for a bit. I mean, for example, the third one, which is 6091, is contacting other government officials to encourage Virginia State research universities to initiate clinical studies. So that's the one that seems to me to really fall within your own definition. Do you disagree with that? Your Honor, I don't. And if they had actually proved what was said in the indictment in the case, I think that this would be a — we'd be making a different argument here. But the problem is they didn't prove that Government Donald tried to encourage anybody. The one — Okay. So on something like that, your argument is a sufficiency argument. Yes, Your Honor. Rather than this was — this is not an official act. And, yes, Your Honor, to be clear, we have two separate arguments here. One is on the jury instructions, where our argument is that even if they agreed with all of our view of the facts, they still would have been required to convict given these erroneous jury instructions. And secondly, our second argument is the sufficiency argument. Even a properly instructed jury in our view could not have concluded that Government Donald crossed that line. But just to be clear, you said at the outset you don't think any of these are official acts, but then I thought — I heard you say that third, contacting other government officials as part of an effort to encourage State research is not an official act? No. That's the indictment, Your Honor. If they had actually proved — I'm asking Justice Kagan is asking, is that an official act? If it actually tried to — If it had been proved. If he had tried to encourage them to do it, yes. If they had proved that he had tried to encourage them to do that, that would have been an official act. Our argument is that, first, the jury was never properly instructed on that question, and, second, he never did, in fact, urge university researchers to do anything. And if I could just conclude before reserving the remainder of my time for rebuttal, at the one event where he actually had direct contact with university researchers, Justice Kagan — this was the luncheon held at the mansion — all of the witnesses who were there actually testified as to two things with respect to the Governor. First, he simply asked neutral questions that didn't try to push the researchers' decisions one way or another. And, secondly, the one time Johnny Williams asked him for something, support before tobacco commission funding, he gave Johnny Williams a very polite no. Mr. Chief Justice, if I could reserve my time. Thank you, counsel. Mr. Dreeben. Thank you, Mr. Chief Justice, and may it please the Court. Petitioner seeks a categorical carve-out from the concept of an official act for things like meetings, phone calls, events, that in his view do not further or advance or attempt to influence a particular government action, but simply provide somebody with access to the government. Well, he's not — he's not the only one. There's an extraordinary document in this case, and that's the amicus brief filed by former White House counsel to President Obama, former White House counsel to President George W. Bush, former White House counsel to President Clinton, former White House counsel to President George H.W. Bush, former White House counsel to President But to agree on something as sensitive as this and to be willing to put their names on something that says this — this cannot be prosecuted conduct, I think, is extraordinary. It may be extraordinary, Mr. Chief Justice, but that doesn't make it correct. I think it rests on several fundamental misconceptions about what the Constitution  government actually does. And I think it's important to pause and look at the implications of what Petitioner's pay-to-play theory of government really is, that people can pay for access, that they can be charged to have a meeting or have a direction made to another government official to take the meeting. It would mean, in effect, that if somebody came to me and said, you know, I know you're having a lot of college tuition issues. We can help you with that. The criminal division is not giving us a meeting on whether to appeal a case. Just call them and see if you can get them to take the meeting. And I don't think that's — No, no. But it's — it's somebody in the government whose client comes to them and says, we'd really like the Solicitor General's office to file a brief in our case. And then that person calls you up and said, can you meet with so-and-so? All he wants to do is sit down with you and persuade you why you should file a brief supporting his case. But getting in the door, Mr. Chief Justice, is one of the absolutely critical figures. So is your answer yes, that that's a felony? If somebody pays me to arrange — No, no. That's the quid. That's the quid side of it. Yes. I'm talking about the quo side and the quid pro quo. Taking a meeting? Yes. I think taking a meeting is absolutely government action. So if — so if the President gives special access to high-dollar donors to have meetings with government officials, that is a felony. Certainly not, Justice Kennedy. Why certainly not? Because the critical issue there is whether the government can prove a quid pro quo. And now we're moving into the realm of campaign contributions, where this Court has given very strict guidance about when a juror — It's not a campaign contribution. What it is is he takes them to lunch, and an expensive lunch at that. Okay? Because the quid side is not limited. The government has argued continuously that in for a penny, in for a pound. Okay? So we don't have the limitation on the quid side. We have a possible limitation in frame of mind, and now we're looking to the quo side. And you want to remove any limitation there. Okay? Now, why do I think that's a problem? Two very fundamental reasons. And it's not because I'm in favor of dishonest behavior. I'm against it. And we have just listed some that is dishonest. My problem is the criminal law as the weapon to cure it. And if the criminal law is the weapon that goes as far as you want, there are two serious problems. One, political figures will not know what they're supposed to do and what they're not supposed to do. And that's a general vagueness problem. And the second is I'd call it a separation of powers problem, that the Department of Justice in the executive branch becomes the ultimate arbiter of how public officials are behaving in the United States, state, local, and national. And as you describe it, for better or for worse, it puts at risk behavior that is common, particularly when the quid is a lunch or a baseball ticket throughout this country. Now, suddenly, to give that kind of power to a criminal prosecutor, who is virtually uncontrollable, is dangerous in the separation of powers sense. So in my mind, right in this case, nothing to do with this petitioner, nothing to do with him. But in this case is as fundamental a real separation of powers problem as I've seen. And I'm not quite certain what the words are. There won't be perfect. They will leave some dishonest conduct unprosecuted. They won't be perfect. They will put some politicians at risk. But I'm searching for those words because, as I said, this is a very basic separation of powers problem for me. And I'd appreciate your help on what the right words are. And I'll tell you right now, if those words are going to say when a person has lunch and then writes over to the antitrust division and says, I would like you to meet with my constituent who's just been evicted from her house, you know, if that's going to criminalize that behavior, I'm not buying into that, I don't think. So I want some words that will help with what I see as as naughty and complicated and difficult and basic a problem as I can think of. Justice Breyer, let me first argue the position that I came here to argue, which is that the official action is not limited by some arbitrary litmus test that was proposed by Petitioner that would exclude things that he calls access. I don't think that that's the right way to look at it. I think that the right way to look at this statute is to recognize that it has multiple elements. We're talking about multiple statutes, but the bribery offense has very similar elements. You first have to decide whether someone is engaging in an official act. Merely going to lunch is not engaging in an official act. There are opportunities to engage in an official act. No one said it is. The lunch with the Chateau Lafitte wine happens to be the quid. And that's worth, like, $1,000 or 500. I don't do it anyway. I don't go to those restaurants anymore. Justice Breyer. But you understand that. I don't. I don't. It's the other side of the equation. I'm more — I understand, Justice Breyer. But what I think it would be helpful for the Court, if I could lay out the multiple elements that are at issue here, because official act does not have to do all the work. You do have to have somebody engaged in their official capacity. You then have to have something that they do within their range of official duties, which going to lunch is not going to be. Third, you need a quid pro quo, which means that the government is going to have to show that the person allowed themselves to be influenced in their conduct by the thing of value that they received, which is to say that somebody is basically saying, I'm going to make a referral over to another agency for you only if you buy me lunch. That is not honorable behavior. And there are many regulations that carve out permissible gift situations and create the fourth element issue that I think is an important protection, which is mens rea. But the problem is, and as you've set forth in your brief correctly, you can imply an agreement over time. You can imply a contract over time. And if the lunch takes place first and there's no precondition on the lunch, but after the standard criminal law that there's a conspiracy there. So I agree with you. Or an agreement. I do agree with you, Justice Kennedy. I think that's exactly the position that Your Honor's opinion in Evans, the separate concurrence, explained as a proper means of administering the quid pro quo requirement as an intent issue in a criminal case. There is a very critical protection here. It's requirement of showing something beyond a reasonable doubt to a jury. And if you have ordinary conduct that's fully disclosed and in accordance with regulations which do strictly limit when people can receive free lunch. Well, I don't see what the relevance of those regulations is. You say there are certain safe harbors created by Federal regulations. Those apply to Federal employees and Federal officers. What do they have to do with the governor of a State or a State employee? Well, they don't, Justice Alito. This case has been litigated on the submission that Section 201 informed the meaning of official action for purposes of the Hobbs Act and the Honest Services Statute. And as a result, the parties have engaged very heavily on the effect on Federal officials. And I think that Justice Breyer's question was primarily directed at them. I do think that there are different issues that arise with respect to State officials. But the mens rea requirements that I've been talking about are going to be fully applicable. Well, but how do you ask? This doesn't answer Justice Breyer's basic question and ours. You're going to tell the Senators, the officials with the lunches that, don't worry, the jury has to be convicted beyond a reasonable doubt, and that's tough. Well, that was your answer. That was your answer. Justice Kennedy, I do think that the requirements of the criminal law in proving something by beyond a reasonable doubt are a substantial part of it. What is it they're trying to prove? Now, of course, this is a State case, not a Federal case. It's a State official. It's a Federal law, but a State official. I don't know. I've only been peripherally involved in political campaigns. But my peripheral convinces me that the candidate will go out and he'll have lunch with hundreds of people. Hundreds. Everybody wants to give him lunch. Great. And he wants to meet as many people as possible. He wants to be friendly. He might receive a raincoat. He might receive all kinds of things. And at some point it becomes very dishonest. But that's a matter for campaign laws. Wait. Now, I've also been involved in the Justice Department, and we would receive many, many letters in the Antitrust Division, have you look into such and such. But I know perfectly well that that senator just wants to go back to the constituent and say, see, I did my best. That's all. Now, you're saying to the jury, take those facts I just gave you, and you look into the state of mind, the state of mind of which the amounts being given will be somewhat indicative, of which the nature of the letter will be somewhat indicative, of whether he writes in personal writing at the bottom will be somewhat indicative, and we're going to let you 12 people work out what was really in that senator's mind. I say that is a recipe for giving the Department of Justice and the prosecutors enormous power over elected officials who are not necessarily behaving honestly. And I am looking for the line. I am looking for the line that will control the shift of power that I fear without allowing too much honesty through this law. You know, other laws exist on the other side. That's what I want your view on. Well, Justice Breyer, I'm going to push back because I think that the line that Petitioner has urged is one that is a recipe for corruption, not a recipe for drawing a safe harbor for public officials. What he has basically urged the Court to hold is that paying for access, if somebody does not put a thumb on the scale of the decision, if I, for example, tell the criminal division, take the meeting, make whatever recommendation is in your best judgment, just take the meeting, I can take money for that. And I think the message that would be sent if this Court put its imprimatur on a scheme of government in which public officials were not committing bribery when all they did was arrange meetings with other governmental officials without putting, in his metaphorical way, a thumb on the scale to the ultimate decision, would send a terrible message to citizens. Well, what I think we're looking for is some limiting principle. Now, you started to say something about campaign contributions. And I know that this case does not involve campaign contributions. But surely a campaign contribution can be the quid, can it not? Certainly. All right. Well, gaining access by making campaign contributions is an everyday occurrence. And maybe it's a bad thing, but it's very widespread. How does it fit — how does that play out? So, Justice Alito, gaining access and ingratiation and gratitude as a result of campaign contributions is not a crime. When it's done as a quid pro quo, it is. And that is not — That's what I want your view — That is not my view, Justice Dreeben. Mr. Dreeben, if I could just follow up on that. You know, if a senator writes to a Federal agency and says, this union or this company is, you know, critical to the economy of my State — and by the way, he doesn't say this, but by the way, they are the biggest contributors to his campaign. Would you please meet with them? And what would not make that a crime? The fact that the jury might not find beyond a reasonable doubt that the reason why he was urging this meeting was because these people, this entity, happened to be a very big supporter? That would be the only thing separating lawful from unlawful conduct there? Let me say two things in response to that. First, this Court has addressed that very issue in the McCormick case. And it has established that merely taking favorable action at or around the time of the receipt of campaign contributions is not sufficient to show a quid pro quo and is not a crime. Nobody doubts that if there's a quid pro quo for a vote, something that I think Mr. Francisco is prepared to concede is official action, although I'm not sure why, since it doesn't personally exercise sovereign power if a legislator casts a vote as a dissenting vote from majority action. But nobody disputes that that is a crime. Therefore, this Court has already carved out evidentiaries and instructional safeguards that prevent against a jury inferring a quid pro quo merely from the coincidence of timing. But I want to come back to something that is even more fundamental, and that is the role of the First Amendment in this case. Because Petitioner has sought to wrap himself in the mantle of the First Amendment probably because the gifts that he received have nothing to do with the First Amendment. They have to do with personal loans and luxury goods. This is not a case about campaign contributions. But when campaign contributions are at issue, he relies very heavily on Citizens United while ignoring a critical piece of Citizens United. This Court in Citizens United looked back to the circumstances that prompted the Federal Election Campaign Act in 1972, and those involved circumstances that were delineated in the Buckley decision in the Court of Appeals. And the Court specifically cited to those practices. And what were those practices? They involved the American milk producers paying $2 million in campaign contributions spread out among a variety of committees to get a meeting at the White House. That's all they did. They said in order to gain a meeting with White House officials on price supports, they paid that money. Other corporate executives testified that paying money was a calling card, something that would get us in the door and make our point of view heard. And this Court said on page 356 of the Citizens United opinion, the practices Buckley noted would be covered by the bribery laws, CEG 18 U.S.C. 201, if a quid pro quo arrangement were proved. Now, of course, it's very difficult to prove a quid pro quo arrangement, and that's why there are campaign finance limitations on contributions to candidates. But the Court had no doubt that paying for excess was a criminal violation. And that's what — Roberts. So if you have a governor whose priority is jobs for his State, and there's a CEO who's thinking about locating a plant in his State, but he can only do it, he says, if he gets tax credits from the State. So the governor is talking to him, and he says, look, why don't you come down to my, you know, trout stream, and we'll go fishing, and we'll talk about this. And the governor does that. He has a nice day fishing for trout, and they talk about whether they can get tax credits, deferred taxes, if the CEO opens his plant in the State. Now, is that a felony? Because he's accepted an afternoon of trout fishing, and he discussed official business at that time. I don't think so, Mr. Chief Justice, but if you change the hypothetical instead, instead of an afternoon of trout fishing, I'll fly you out to Hawaii, and you and your family can have a vacation, and during that time we can go over my policy proposals. But I thought — I didn't think the government put any weight on the amount of the quid. In other words, you know, okay, I don't know how much an afternoon of trout fishing is worth, but I gather you can be charged for that and pay for it. I thought that didn't matter. I thought it was whether he was engaged in an official act under circumstances in which a jury could find he did it because of the gift. Yes. And so if all he's doing is talking about ways to get jobs for Virginia, and he's talking with the person who's going to make that decision from the private sector based in part on whether or not he gets, you know, tax credits, it would seem to me that under your definition that governor is guilty of a felony. I'm not sure that he is guilty of a felony, but the reason why I changed the hypothetical to involve a larger quid is because the implications of carving something out from official action mean that it can be sold and that it's lawful to be sold. And when you change the trout fishing to a trip to Hawaii, it becomes more nefarious. And the message that it sends to citizens — Yes, but that's the point. You see, what — exactly what the Chief Justice asked. What's the lower limit in the government's opinion on the quid? What? Tell me right now. If you're going to say $10,000, okay, I feel quite differently about this. If you will say an afternoon of trout fishing or et cetera, then I feel quite differently. It's pretty hard to see the conduct being honest if you exempt the campaign contributions and put it up somewhere. But I didn't think that was the government's position. It's not the government's position. What — you tell me I'm wrong in for a penny, in for a pound. You tell me right now it is not the government's position that the trout fishing afternoon is sufficient to be a quid. If you say that, I'll feel differently about the case. It's tempting, Justice Breyer, but I'm not going to — Exactly. — exempt from the corruption laws certain types of quids. But, Justice Breyer, you do need to run this through all the elements of the offense. I think what Petitioner is saying, and I think some of the Court's hypotheticals are suggesting the only thing that really you could possibly do to remedy this issue is to shrink the definition of official action with no textual basis in 201, nor really, I think, any common-sense basis in the way that government — Well, you tell me. That's why I asked you at the beginning, and you — in order to be — you say you're going to push back, and then you complained about their definition. If I thought their definition was so perfect, I wouldn't have asked you. And it's exactly — you tell me how to do this, and I'm not — you say it sends a terrible message. I'm not in the business of sending messages in a case like this. I'm in the business of trying to figure out the structure of the government. And that's part of separation of powers, and I expressed my concern. And I dissented in Citizens United. So whatever that said there. But the point is the one I raised at the beginning that every single one of us has raised. We're worried about — because like any other organization, the prosecutors, too, can be overly zealous. That can happen. And so we need some protection on both sides, even though the line won't be perfect. And it will fail to catch some crooks. And it will — I mean, I understand that. And I want to know your view. And it doesn't even — it helps a little, but not a lot, to say, well, meetings. That's too specific. I want to know what your view is as to the language we write in discussing the line. Well, I don't think you and I agree on where the line should be, Justice Breyer. So I can't write language that is going to satisfy you. All right. You weren't even satisfied with Petitioner's language, which requires that there be influence on some other governmental decision. You suggested you thought that was too broad. No. No. No. Well, yeah, yeah, yeah. I did suggest it. I think that it's too narrow. I think that if the Court is going to reject the government's submission, which is that when the governor calls his secretary of health and says, take the meeting with my benefactor — he doesn't disclose it's his benefactor — take the meeting so that that person can have the preferential opportunity that other citizens who do not pay will have to make his case before you, I think that is official action. Petitioner says it's not official action unless he further sends the message, which I think on the facts of this case was sent, he's trying to influence the ultimate outcome. If the Court is going to reject the government's position in this case, then I think that a fallback position for the government is when you have an indisputed official action, such as will the Universities of Virginia study a particular product, or will the Tobacco Commission fund it, then when a public official takes action to direct that decision, to influence that decision, or to advance his benefactor's interests with respect to that decision, that constitutes the crime of bribery. There is, given the difficulty that we're having in settling on what these words in the statute mean, there is an argument in the Petitioner's brief that you have responded to in yours that the statute is unconstitutionally vague. Well, I do not think that it is unconstitutionally vague. First of all, we're talking here about multiple statutes. We're talking about Hobbs Act extortion, which this Court has previously construed in both McCormick and Evans to be perfectly valid upon the proof of a quid pro quo when the official asserts that his action will be controlled by a thing of value that he has received. And now we're talking about the question of what constitutes official action for purposes of a common law crime that goes back centuries and was incorporated into the Hobbs Act. We're also talking about the Honest Services statute, which this Court in Skilling just six years ago determined could be construed. Well, yeah, could be construed. I mean, there were, what, three votes to find it unconstitutional, and the others say, well, no, because you can narrow it in this way to the core definition of bribery. And now maybe the experience we've had here and the difficulty of coming up with clear enough instructions suggests that the caution the Court showed at that point was ill-advised. Well, I think it would be absolutely stunning if this Court said that bribery and corruption laws, which have been on the books since the beginning of this nation and have been consistently enacted by Congress to combat both Federal, State, and local corruption. Would it be absolutely stunning to say that the government has given us no workable standard? Well, we have given you a workable standard. It's the standard that comes from this Court's 1914 decision in Birdsong, where the Court said that things that government officials do under a bribery statute much like this are covered as official action, and they're not limited to things that say — Well, perhaps what you're talking about is how evil the conspiracy is. It's not evil to fish or to have a bottle of wine, but it is evil if you up the ante. Is that what you're saying? I think what I'm trying to say, Justice Kennedy, is that it's going to be extremely difficult for anyone to really believe that you could buy a governor's position on a multimillion-dollar tax support for an afternoon of trout fishing. And that's why those cases don't get brought. No one thinks about them. It's not really even clear there is a quid pro quo for any official action. Can I ask you a narrower question, Mr. Dreeben? So one of the official acts here — I'll just read it to you — it's allowing Johnny Williams to invite individuals important to Star Scientific's business to exclusive events at the governor's mansion. Yes. So that's essentially hosting a party and allowing Mr. Williams to invite some people. And why does that — why is that an official act in your view? So, Justice Kagan, it wasn't hosting an official party. We're talking about here of two events. One was a product launch hosted at the governor's mansion where the government is basically giving his credibility to a brand-new product. And the invitations were critical to Johnny Williams's plan to sign up the universities to do the studies. He got to pick — So here's, I guess — I mean, I guess my question is this. The official act, the statute, the definition, I mean, requires that there be some particular matter, cause, suit, proceeding or controversy. Correct? Yes. And if I understand the theory of this case, the matter, suit, cause, proceeding or controversy here, is the attempt to get the University of Virginia to do clinical studies of this product. Is that correct? It's narrower than our full scope of the charge, but it's essentially correct. That's the gravamen of the thing. Correct. So, if you had just — if the indictment and then the instructions that were based on the indictment had said the official act is getting the University of Virginia to do clinical studies, right, that reads very differently from the way this indictment was What this indictment does is it takes a lot of different pieces of evidence that might relate to that official act and charges them as official acts themselves so that the party becomes an official act, or calling somebody just to talk about the product becomes an official act. Do you see what I mean? I mean, this might have been perfectly chargeable and instructable, but I guess I'm troubled by these particular charges and instructions, which seems to make every piece of evidence that you had an official act, rather than just saying the official act was the — was the attempt to get the University of Virginia to do something that they wouldn't have done otherwise. So, Justice Kagan, what the crime was here was the Governor accepting things of value in return for being influenced in taking official actions to legitimize, promote, and secure research studies for Inattablock and Starr's products. That's at supplemental JA-14. It then alleges that he would do this as opportunities arose in the course of his official actions. And because he's the Governor and he has a tremendous amount of influence throughout the government, he appoints all the Board of Visitors of VCU and UVA, he sets the budget, they know that he's an important guy, he has lots of opportunities to do this in different ways over time. And if you look at the pattern of what he did, directing people to meet with Starr's representatives, arranging events at the mansion in which Starr could bring together its chosen guest list of the doctors who he wanted to influence with the Starr people who were trying to influence it, the Governor is taking every step he can do short of saying to UVA, do the studies, which his Chief Counsel told him would be inappropriate and wasn't going to do. So, I think that if you look at the indictment the way that it's actually structured, it arose, was going to engage in official acts. This is a theory of corruption that Justice Sotomayor's opinion in Ganem in the Second Circuit validated and it was cited in Skilling as a perfectly valid theory of corruption. And, therefore, the individual official acts really form a composite window into Petitioner's mind. Did he intend to allow his official conduct to be controlled by the things of value that he received? And, taking them all together, even if the Court has trouble with any individual one, they allowed a rational jury to infer that, indeed, he did. And, the only way that Petitioner could win, if you agree with me on the sufficiency issue, is if you conclude that jury instructions must exempt certain types of official actions, like directing your Secretary of Health to take a meeting, which is a very kind of significant event in the life of a Cabinet member and a governor, or hosting an event at the mansion can't possibly count because it somehow should be viewed as social, when, in fact, what the governor is doing is allowing his benefactor to get all the people in the room who he wants to influence to do the studies. So, in my view, there was nothing wrong, if I can complete the sentence, in the way that the indictment structured the crime in this case. The official acts were exemplary, they were proved, and the jury could properly find them. Thank you. Roberts. Thank you, counsel. Mr. Francisco, five minutes remaining. Francisco. Thank you, Mr. Chief Justice. I have three basic points I would like to make. First, I'd like to start out with the government's argument that a lot of the problems with its theory are solved by the quid pro quo requirement. Well, in fact, the gratuity statute, the Federal gratuity statute, has the exact same official act requirement, but no quid pro quo requirement at all. So what that means is that if you take somebody to a fancy lunch with a, I can't remember the name of the bottle of wine you mentioned, Justice Breyer, but you took them to that fancy lunch to thank them for referring you to a meeting with a mid-level staffer, even if there was no suggestion at all that you were going to do anything other than call that staffer and say, hey, can you take a meeting with this guy, hear him out, and exercise your independent judgment, that would be a violation of the Federal gratuity statute. And, indeed, under the government's broad theory that anything within the range of a quid pro quo requirement is allowed, that means that if you took the person out to that lunch as thanks for giving you a tour of the Capitol building, you would likewise have violated the Federal gratuity statute, because there, there is no quid pro quo requirement at all. Point two. Justice Breyer, we're just — Sotomayor. There is a difference between someone saying thank you for a decision you made independent of the gift. That's the Sun Grower's case. And someone buying you an expensive lunch and saying, I'm paying for this lunch, but make sure I get a tour, you don't see the difference? Not under the Federal gratuity statute, Your Honor, because the Federal gratuity statute is meant to prohibit thanking somebody for giving you an official act. And so if an official act is, in fact, a tour of the Capitol building or a meeting with a staffer, then you have, in fact, violated the Federal gratuity statute when you take them to lunch as a thanks for that particular act. Second point, Justice Breyer, in trying to figure out the right verbal formulation, the first point I'd like to make is if we can't figure out a proper verbal formulation, then I think there are some very serious vagueness problems with the statute. It's Birdzall. It's Birdzall. Look, I can — I've read the Brown Commission report. I've read the Model Penal Code. I've read all these efforts to get language. And I've looked at the present statute. And I think I can limit that because the statute itself seems to cover things like voting and contracts, et cetera. But it's also true that a person who tries to influence those things has committed bribery. I think that's correct. Now, my problem is with Birdzall and how do we write those words so that they do catch people who are doing this dishonest thing without, as I've said five times, allowing the government the freedom to go and do these ridiculous cases? And I think the D.C. Circuit's in-bank decision — I'm not saying this one is a ridiculous one, by the way. Understood, Your Honor. I think that the right answer, you start out with the D.C. Circuit's decision in Valdez. You look at that listing of words, question, matter, suit, cause, proceeding. And those are actual decisions that the government makes, the government as a whole, as a sovereign. And then you say, are you making a decision on that, if you're the final decision-maker? Or if you're not the final decision-maker, but because of your official power, you have the ability and the authority to influence other decision-makers, then are you doing that? Here, the fundamental — Mr. Dreeben's argument that if we read the statute as you are urging, then every government official can say, you want to have a meeting? Pay me $1,000. The corruption that's inherent in the position that says it's okay to facilitate a meeting, it's okay to say, I'll do it for you if you pay me $1,000. That's your view, that that would be okay. Your Honor, and frankly, this was leading to my third point, which is, if there's absolutely no way — if there's no indicia that you're actually trying to influence the outcome and it really is just a meeting, yes, but that reflects the fact that these broad and vague statutes are not comprehensive codes of ethical conduct. There are lots of other statutes that would prohibit precisely what you are suggesting, Justice O'Connor, and you don't have to interpret — That doesn't happen in prison time. Justice Ginsburg, I am very, very, very sorry. Justice Ginsburg, my apologies. There are lots of other statutes that would prohibit that precise conduct, and you don't need to take statutes like the Hobbs Act and honest services statute. Well, what would, Mr. Francisco — I mean, just take Mr. Dreeben's own example, which is the example of somebody — he's running a business and he's taking $5,000 at a pop every time he arranges a meeting with the criminal division for somebody. Sure. There's a statute that prohibits supplementing your public salary with private money. So if you're essentially taking outside money for the performance of your official duties, that's illegal. That was discussed in the Sundiamond case. There's another statute that prohibits you from doing any — taking anything from anybody whose interests could be substantially affected by the performance or nonperformance of your duties. So that's another one it would prohibit — that would prohibit it. There's another provision of this bribery statute that prohibits you from taking any action, not just official action, but any action in violation of your official duties. So I think that might be captured as well. Why are they any less vague? Excuse me? Why aren't they any less vague? What you're saying is that holding a meeting, taking a phone call, having a party is not illegal, that that is something that you're entitled to do. So why would all those statutes be any less vague? They may well be in certain circumstances, but I think that the ones that are simply saying — for example, the civil service statutes that simply say you can't take anything from anybody who is a covered person. That's not vague. It just says that you can't take anything from anybody who's in your job. Most Federal government officials are very familiar with that. That's why you really just don't take gifts from anyone. The problem here is that we had a State regime that was much less stringent than the Federal regime, and the government wanted to use the open-ended Hobbs Act and honest services statute to fill that gap in what they perceived as the State law. I would respectfully submit that that is an inappropriate use of Federal power. Thank you, Mr. Chief Justice. Thank you, counsel. Mr. Dreeben, could I invite you to return to the lectern? Our records reflect that this was your 100th oral argument before the Court. You are the second person to reach that rare milestone this century. I distinctly recall your first argument in January of 1989. Throughout your career, you have consistently advocated positions on behalf of the United States in an exemplary manner. On behalf of the Court, I extend to you our appreciation for the many years of advocacy and dedicated service during your tenure in the Solicitor General's Office and as an officer of this Court. We look forward to hearing from you many more times. Thank you. The case is submitted.